IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SELENA EVANS,

     Plaintiff,

v.

GWINNETT COUNTY SCHOOL
DISTRICT,

     Defendant.

CIVIL ACTION FILE NO.

1:20-cv-687-JPB-JKL

## FINAL REPORT AND RECOMMENDATION

In this employment discrimination case, Plaintiff Selena Evans alleges that Defendant Gwinnett County School District violated the Family and Medical Leave Act of 1993 (the "FMLA"), Title I of the Americans with Disabilities Act of 1990 (the "ADA"), and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") by not restoring her to a teaching position after she took extended medical leave and preventing her from obtaining partial unemployment insurance benefits. The case is before the Court on Defendant's Motion for Summary Judgment. [Doc. 53.] For the following reasons, it is **RECOMMENDED** that the motion be **GRANTED**.

## I.   BACKGROUND

In determining the material facts of this case, the Court has considered Defendant's Statement of Undisputed Material Facts ("DSMF" [Doc. 53-2]), Plaintiff's Statement of Additional Undisputed Material Facts ("PSAF" [Doc. 80-2]), and the responses thereto ("R-DSMF" [Doc. 80-1], "R-PSAF" [Doc. 81-1]). The Court will not rule explicitly on each and every objection or dispute presented by the parties, and will discuss objections and disputes only when necessary to resolve a genuine dispute over a material issue of fact.  Additionally, the Court includes some facts drawn from its independent review of the record.  *See* Fed. R. Civ. P. 56(c)(3).  The Court takes the facts in the light most favorable to Plaintiff as the non-moving party.

### A.   Facts

Plaintiff formerly worked for Defendant as a special education teacher. (DSMF ¶ 24.)  During the 2017-18 school year, she was assigned to teach the "emotional/behavioral disordered" or "EBD" classroom at Lanier Middle School. (DSMF ¶ 26.)  Donald Hamilton was the Lanier Middle School principal at that time.  (Dep. of Donald Todd Hamilton [Doc. 56] at 6-7.)

In October 2017, a substitute teacher alerted Hamilton that she found political cartoons on Plaintiff's classroom desk that she thought were

2

inappropriate.[1]  (*Id*. at 13-15.)  Hamilton reviewed the cartoons and agreed that they were not appropriate for the classroom.  (*Id*. at 15.)  Hamilton called Human Resources for guidance.  (*Id*.)

On October 23, 2017, Human Resources Staffing Director Dr. Leslie Lewis met with Plaintiff to discuss the cartoons.  (Dep. of Leslie Lewis ("Lewis Dep.") [Doc. 62] at 45; Dep. of Pl. ("Pl. Dep.") [Doc. 55] at 101-02; *see also* Decl. of Pl. ("Pl. Decl.") [Doc. 80-4] ¶ 5.)  Lewis told Plaintiff that she thought the cartoons were inappropriate and that Plaintiff would be placed on paid leave for two to three days so an investigation could be conducted.  (Pl. Dep. at 102.)

That same day, Plaintiff took a medical leave of absence.  She applied for short-term disability benefits, which was granted.  (Pl. Dep. at 50-51, 108-09; *see also* Pl. Decl. ¶ 5.)  Separately—and important for present purposes—Plaintiff applied for, and was granted, FMLA leave effective October 20, 2017.  (DSMF ¶ 38; Pl. Dep. Ex. 21.)  Plaintiff exhausted her FMLA leave on February 1.  (DSMF

---

[1] One was a single-panel cartoon depicting former President Trump making anti-Muslim statements during a job interview with Adolf Hitler on an episode of the reality television series Celebrity Apprentice.  (Pl. Dep. at 106; *see also id.* Ex. 26.)  Another cartoon, which is not in the record, purportedly discussed the history of the United States "hating black people."  (*See* Dep. of Kelli Rodriguez [Doc. 58] at 31.)

3

¶ 38.)  Plaintiff remained out on approved leave, however, for nearly nine more weeks under Defendant's Leave of Absence Policy GBRIC.  (*See* Pl. Dep. Ex. 19.) During the period between the expiration of Plaintiff's FMLA leave and her release to return to work, Defendant hired a teacher to fill the position Plaintiff had held prior to taking leave.[2]  (DSMF ¶ 47.)

On March 26, 2018, Plaintiff obtained and provided to Defendant a full-duty medical release from her doctor clearing her to return from extended leave effective March 27, 2018.  (Pl. Dep.  Ex. 22; DSMF ¶ 43.)  On March 27, Lewis met with Plaintiff to resume the investigation concerning the political cartoons and to obtain a statement from Plaintiff.   (Lewis Dep. at 45-46.)   Three days later, after concluding the investigation, Lewis met with Plaintiff and issued a letter of direction summarizing the investigation's findings and addressing Plaintiff's conduct.  (PSAF ¶ 12; Pl. Dep. Ex. 27; *see also* Pl. Decl. ¶ 12 (referring to meeting on March 30, 2018).)  The notice stated:

> This correspondence serves as a letter of direction regarding an Internal Investigation of Alleged Employee Misconduct, which opened October 22, 2017 and was jointly conducted by Principal

---

[2] It is undisputed that Plaintiff's position at Lanier Middle School was held open for her during the term of her FMLA leave and that had she returned before her FMLA leave expired, Defendant would have returned her to the position she held before taking leave.  (DSMF ¶¶ 48-49.)

Todd Hamilton and GCPS Human Resources and Talent Management. The investigation was closed following your return from leave on March 27, 2018.

On Monday, October 22, 2017, it was reported that you allegedly left an inappropriate political cartoon as part of your lesson plans, with the intent for the substitute teacher to utilize with students in your absence. Additionally, the political cartoons were reportedly sent to the ISS classroom for your students to use. You indicated that the cartoons were downloaded with a group of political cartoons, but were subsequently placed inside a folder and hidden under a desk calendar.

While you stated that it was not your intent for the cartoons to be utilized with students, it is critical that you allow adequate time to plan lessons that are correlated with the AKS, and most importantly, use resources that are appropriate for student use. The previously referenced behaviors can reflect negatively on your job performance, decision-making and responsibilities, and could impact your rating on the following Gwinnett Teacher Effectiveness (GTES) standard

(Pl. Dep. Ex. 27) On March 30, 2018, Plaintiff signed the letter, acknowledging receipt. (*Id.*)

After closing the investigation on March 30, Lewis began to search for a position in which to place Plaintiff. (PSAF ¶¶ 11, 12.) Lewis told Plaintiff that her former position at Lanier Middle School had been filled but that she (Lewis) would look for another position and communicate with Plaintiff about assigning her to a new position. (DSMF ¶ 52.) As someone returning from leave, Plaintiff could not

5

apply for a new job directly with individual schools.  (PSAF ¶ 2.)  The pertinent

policy, Board Policy GBRIC, provides:

> At the end of an approved leave of absence not covered by FMLA,
> every effort will be made to place the employee in a vacant position
> for which he or she qualifies that is equivalent to the previous
> position held.  If a vacant position is not available, or the employee
> refuses an offered position, the employee will be terminated and will
> be eligible to apply for future positions within GCPS.  Human
> Resources will determine if an employee is qualified for an
> alternative position.

(Pl. Dep. Ex. 19.)

It is unclear from the record how much time Lewis actually spent looking

for a position in which to place Plaintiff.  It is undisputed, however Lewis did not

search for possible jobs until the conclusion of the investigation on March 30

(PSAF ¶ 11); that the following week was spring break; that on the Monday after

spring break, April 9, 2018, Lewis told Plaintiff that she would be placed in a

position with a start date in July for the 2018-2019 school year (Def.'s Resp. and

Objs. to Pl.'s First Interrogs. at 7 [Doc. 61-2 at 7]); and that Lewis stopped looking

for jobs for the 2017-2018 school year the week after spring break (PSAF ¶14).

According to Lewis, she did not offer Plaintiff a position for the remainder of the

2017-2018 school year because her search yielded no vacancies equivalent to

Plaintiff's former position available for the remainder of the 2017-2018 school

year.  (Lewis Dep. at 61, 66.)  Lewis explained that this was because of the close proximity to the end of the school year.  (*Id.* at 64.)  Plaintiff contends, however, that there were numerous special education positions posted internally and available at the time.  (*See* R-DSMF ¶ 61; PSAF ¶¶ 18-29, 31-34.)

Plaintiff, meanwhile, was clear in her interactions with Lewis around this time that she needed to work to support her family.  (Pl. Decl. ¶ 17.)  Lewis responded that Plaintiff "should have thought about that before [she] went out on leave for that long."  (*Id.*)  Lewis also told Plaintiff that "she would decide where and when" Plaintiff would return to work and that Plaintiff "should be grateful that she was returning to work."  (*Id.*)  According to Plaintiff, she "even offered [Lewis] details of how [she] was struggling financially and could not survive without income for the entire summer"; however, in response, Lewis "reiterated that [she] should not have gone out on leave."[3]  (*Id.*)  Plaintiff also asked if she could apply

---

[3] Defendant objects that Plaintiff's declaration statement that Lewis told her that she should not have gone out on leave is inadmissible hearsay. (R-PSAF ¶ 9.) To the contrary, the testimony is admissible under Federal Rule of Evidence 801(d)(2)(D), which defines a statement made by a "party's agent or employee on a matter within the scope of that relationship and while it existed" as non-hearsay. *See also Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013).

for unemployment insurance, and Lewis responded that she was not eligible because she was still employed with Defendant. (Pl. Dep. at 74.)

On or about May 11, 2018, Dr. Lewis informed Plaintiff that she was being assigned to a teaching position at Radloff Middle School. (*Id.* at 79-80.) Plaintiff objected to being placed there because it was far from her home. (*Id.* at 82-84); [*See* Doc. 53-13 at 1.] Defendant then offered her a position at Duluth Middle School, which Plaintiff also did not accept. [Doc. 53-13 at 3.] Finally, Defendant assigned her to work as a special education teacher at North Gwinnett Middle School, which was closer to her home. [*Id.*]; (Pl. Dep. at 83, 155.) Plaintiff accepted that position.

In June 2018, Plaintiff filed an unemployment insurance claim with the Georgia Department of Labor (the "DOL"). (DSMF ¶ 74.) On August 3, 2018, Tatia Neal, a leave coordinator in Defendant's Human Resources department, used Defendant's Peoplesoft database to complete a written "fact-finding request" to provide information to the DOL. (DSMF ¶ 76; Dep. of Tatia Neal ("Neal Dep.") [Doc. 57] at 7, 9-10, Ex. 1.) Neal had no knowledge of Plaintiff's leave or alleged disability. (DSMF ¶ 77.) The DOL denied Plaintiff's claim for benefits at its initial level of review. [*See* Doc. 53-16.] Plaintiff appealed the denial, and Neal testified

8

at an administrative hearing.  (Neal Dep. at 10, Ex. 2.)  The DOL ultimately denied Plaintiff's claim for unemployment insurance because teachers are not eligible for unemployment insurance during school breaks where there is a reasonable assurance of returning to work.  (DSMF ¶ 78; R-DSMF ¶ 78.)

### B.    Procedural Posture

On February 14, 2020, Plaintiff filed this action.  [Doc. 1.]  She asserts the following claims:  (1) retaliation for requesting and taking FMLA leave, in violation the anti-retaliation provision of the FMLA [*id*. ¶¶ 42-47]; (2) discrimination on the basis of a disability in violation of the Rehabilitation Act and the ADA [*id*. ¶¶ 48-58]; and (3)  retaliation for taking medical leave because of her disability, in violation of the Rehabilitation Act and the ADA [*id*. ¶¶ 59-68].

On February 8, 2021, Defendant moved for summary judgment as to all claims.  [Doc. 53.]  On March 16, 2021, Plaintiff filed her response in opposition to the motion [Doc. 80], and on March 30, 2021, Defendant filed its reply [Doc. 81].  The motion is presently ripe for resolution.

## II.    SUMMARY JUDGMENT STANDARD

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing that it is

entitled to summary judgment.  *Id.*  ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (holding that *Celotex* did not change the rule that the movant bore the initial burden, and stating, "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial"). The movant may carry its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

"Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.  The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*,

477 U.S. at 324 (quotation omitted); *see* Fed. R. Civ. P. 56(c). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor. *Id.* at 255.

## III.    DISCUSSION

In the discussion that follows, the Court first addresses Plaintiff's argument that the summary judgment should be denied because she has presented direct evidence of discrimination and retaliation.  Next, the Court addresses Plaintiff's FMLA retaliation claim, followed by the ADA and Rehabilitation Act retaliation claims, and finally, the ADA and Rehabilitation Act retaliation claims.

### A.    Direct Evidence

Plaintiff argues that Defendant is not entitled to summary judgment on her FMLA, ADA, or Rehabilitation Act claims because she has presented direct evidence of discrimination.  [Doc. 80 at 4-5.]  "Direct evidence is evidence, that, if

11

believed, proves the existence of discriminatory intent without inference or presumption." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018) (cleaned up).  The direct evidence must evince both a discriminatory attitude and a correlation between that attitude and the discrimination complained of by the employee:  "[o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Todd v. Fayette Cnty. Sch. Dist.*, __ F.3d __, 2021 WL 2149351, at *6 (11th Cir. May 27, 2021) (citing *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020)).  For example, in this case, "direct evidence would be a management memorandum saying, 'Fire [Plaintiff]—[s]he is [disabled].'"  *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *s*

Plaintiff argues that Lewis made two statements that constitute direct evidence of discrimination:  (1) Lewis's statement to Plaintiff that she "should not have gone out on leave" (*see* Pl. Decl. ¶ 17), and (2) Lewis's statement to Plaintiff that Plaintiff did not get to decide where and when she would work after returning from leave (*see* Pl. Dep. at 80).  [Doc. 80 at 4.]  Citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1293 (11th Cir. 1999), Plaintiff argues that those statements

constitute direct evidence of discrimination because a reasonable jury could find from it that "more probably than not, a causal link between an adverse employment action and a protected personal characteristic." [*Id.*] Defendant counters that, even if Lewis made those statements, they do not establish that Defendant discriminated against her on the basis of her disability status, the fact she had taken FMLA or medical leave, or any other protected classification. [Doc. 81 at 3.]

The Court readily concludes that Lewis's statements are not direct evidence of retaliation or discrimination because they are not "blatant remarks, whose intent could mean nothing other than to discriminate on the basis" of a protected classification. *See Fernandez*, 961 F.3d at 1156. It is undisputed that Defendant has a policy that provides for employees who have taken a leave of absence beyond the 12-week FMLA maximum, Defendant will attempt to place them in a comparable position upon being released to work. The location and timing of the placement is not up to the employee. Viewed in this context, Lewis's statements can reasonably be understood as simply sharing with Plaintiff the unfortunate reality that an employee returning from an extended leave of absence has little control over where or when he or she is placed. While perhaps insensitive, these

13

statements are better understood as circumstantial evidence of discrimination, rather than direct.

*Wright,* cited by Plaintiff, does not compel a different result. In that case the lead opinion endorsed the view that direct evidence of discrimination is evidence that "more probably than not" shows a link between discriminatory animus and an adverse employment action. *Wright*, 187 F.3d at 1300. This is a broader definition than the one the Eleventh Circuit has used in other cases. *See, e.g.*, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) ("If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence."), *abrogated on other grounds by*, *Lewis v. Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc). Although *Wright* is a published decision, it is not precedential because the other two members of the panel concurred in judgment only and did not join the lead opinion. *See Wright*, 187 F.3d at 1306; *see also Robertson v. Riverstone Cmtys.*, __ F. App'x __, __, 2021 WL 840915, at *4 n.6 (11th Cir. Mar. 5, 2021) (rejecting identical argument raised by Plaintiff's counsel and explaining that *Wright* is not binding precedent because "[t]he two other judges on the panel concurred in judgment only; they did not join the lead opinion's articulation of the direct-evidence standard"); *East v. Clayton Cnty., GA*,

436 F. App'x 904, 910 (11th Cir. 2011) (observing that although *Wright* has not been overruled, no published circuit opinion has applied the standard in *Wright* since it was decided); *Hunt v. Bibb Cnty. Props., LLC*, No. CIV.A. 13-00241-KD-M, 2014 WL 2093796, at *5 n.4 (S.D. Ala. May 20, 2014) (declining to apply *Wright*'s broader definition of direct evidence), *aff'd sub nom.*, *Brown v. Bibb Cnty. Props., LLC*, 602 F. App'x 755 (11th Cir. 2015).

For these reasons, the Court finds that Plaintiff has not presented direct evidence of discrimination.

## B.    FMLA Retaliation

The FMLA provides eligible employees with "a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with her substantive rights under the act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating

15

against employees ... who have used FMLA leave.").  In this case, Plaintiff asserts an FMLA retaliation claim only.

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the Court applies the familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[4]  *See Brungart v. BellSouth Telecommc'ns Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).  "First, the employee must make a prima facie case showing that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020).  "The adverse employment action must be material, meaning it must be one that 'could well dissuade a reasonable worker' from engaging in protected activity."  *Wood v. Gilman Bldg. Prod. Inc.*, 769 F. App'x 796, 802 (11th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).[5]  If the employee

---

[4] 411 U.S. 792 (1973).

[5] The Court pauses to note that although the Eleventh Circuit has not explicitly identified what standard applies in determining whether an employment action is "adverse" in the context of an FMLA retaliation claim, the Court of Appeals has assumed that *Burlington*'s "materially adverse" standard applies.  *See Foshee v. Ascension Health-IS, Inc.*, 384 F. App'x 890, 891-92 (11th Cir. 2010).  This standard is more relaxed than the standard courts apply in the context of

establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action. *Munoz*, 981 F.3d at 1271. If the employer provides such a reason, "the burden shifts back to the employee to produce evidence that the employer's reason is pretextual." *Id.*

Here, the parties do not dispute that Plaintiff engaged in protected activity by applying for and taking FMLA leave. Defendant argues, however, that neither of the alleged adverse employment actions that Plaintiff claims to have suffered— *i.e.*, failing to place her in a position for the remainder of the 2017-2018 school year and preventing her from obtaining unemployment insurance benefits—qualifies as an adverse employment action. Defendant further argues that Plaintiff has not established a causal link between either of those purported adverse employment actions and her exercise of her rights under the FMLA. Finally, Defendant argues that even if Plaintiff can establish a prima facie case, it has provided legitimate,

---

disparate treatment claims. In a disparate treatment claim, the plaintiff must show present evidence that "a decision of the employer impacted the terms, conditions, or privileges of [her] job in a real and demonstrable way" and that it had an "tangible adverse effect on the plaintiff's employment." *Jefferson*, 891 F.3d at 920-21 (citations omitted; alterations adopted). For present purposes the Court assumes that the more lenient *Burlington* standard applies to FMLA retaliation claims.

nonretaliatory reasons for its actions and Plaintiff has not presented sufficient evidence to show that those reasons are pretext for retaliation.

### 1.     Adverse Employment Action

Broadly speaking, there are two potential adverse employment actions at issue in this case:   Defendant's alleged interference with her claim for unemployment insurance benefits and Defendant's failure to place her in a position for the remainder of the 2017-2018 school year.   The Court addresses each in turn.

### a.     The DOL's Denial of Unemployment Benefits is Not an Adverse Employment Action.

Plaintiff alleges in her complaint that Defendant subjected her to an adverse employment action by "ensuring that she did not receive unemployment compensation." [Doc. 1 ¶¶ 44, 54, 64.]  Plaintiff contends that Defendant did this by (1) not filing for partial benefits on her behalf when it did not place her in a position for the remainder of the 2017-2018 school year; and (2) telling Plaintiff that she did not qualify for unemployment benefits.  [Doc. 80 at 15-17.]  According to Plaintiff, "[h]ad Defendant filed the claim for partial benefits in April when it claims that it determined there was a lack of work for Plaintiff, [she] would have been entitled to benefits because the school year was in session." [*Id.* at 17.]

The Court disagrees. For starters, the premise of Plaintiff's argument—that an employer is required to apply for partial unemployment benefits—is incorrect. The applicable DOL regulation, Ga. Comp. R. & Regs. 300-2-4-.09, is permissive, providing only that an employer **_may_** file for partial unemployment benefits. Along these lines, it is undisputed Defendant has not applied for partial unemployment benefits for any of its employees. (DSMF ¶ 79.) Objectively viewing the evidence, no employee could reasonably believe that Defendant would apply for partial unemployment benefits on her behalf. Thus, it cannot be said that Defendant's failure to do so here might have dissuaded a reasonable worker from exercising her rights under the FMLA.

Likewise, Plaintiff has not shown that Lewis's statement that she did not qualify for unemployment benefits was an adverse employment action. Assuming that Lewis made such a statement,[6] a reasonable jury could not find that this statement might dissuade a reasonable worker from applying for or taking FMLA leave. To begin with, it is not clear that Lewis's statement was even false. Plaintiff

---

[6] Lewis denies telling Plaintiff that she was not eligible for unemployment benefits because that was not an area of human resources that she handed. (Lewis Dep. at 98.) The Court must accept for present purposes, however, Plaintiff's testimony that Lewis told her she was ineligible for benefits.

contends that had she applied for benefits in April they would have been granted; however, she cites no evidence whatsoever to support her *ipse dixit* assertion that the DOL would have done so.  Thus, she offers nothing more than conjecture that the DOL would have approved a claim for benefits.  But even more importantly, Plaintiff does not present evidence that she relied on Lewis's statement in making a decision whether to apply for benefits.  Nor does she present evidence that Lewis prevented Plaintiff from applying for unemployment benefits.  Thus, viewing the evidence from the standpoint of a reasonable employee, no jury could find that Lewis's statement would have dissuaded the employee from exercising her rights under the FLSA.[7]

For these reasons, the Court finds that Plaintiff's FMLA retaliation claim fails as a matter of law to the extent that it is based on Defendant's alleged interference with unemployment insurance benefits.

---

[7] The Court does not understand Plaintiff to argue that Neal's participation in the DOL administrative proceedings constituted an adverse employment action. [*See* Doc. 80 at 15-17.]  And nor could she, because in her complaint, she alleges only that "Defendant caused Ms. Evans to be denied unemployment benefits by not filing for partial benefits on her behalf and by telling Ms. Evans that she was not entitled to receipt of benefits."  [Doc. 1 ¶ 34.]

b.   **Defendant's Failure to Place Plaintiff in a Position for the Remainder of the 2017-2018 School Year is an Adverse Employment Action.**

Plaintiff also contends that she suffered an adverse employment action when Defendant did not place her in a position for the remainder of the 2017-2018 school year.[8]  [Doc. 80 at 6, 7.]  Defendant argues that this does not qualify as an adverse employment action because there were no positions available and she was eventually placed in a position for the next school year.  [Doc. 12-13.]  Plaintiff responds that she did suffer an adverse employment action, in that she was unable to work and lost income.  [Doc. 80 at 7.]  Defendant replies that it is not responsible for either her inability to work or the loss of income because there was no position available for her when she returned.  [Doc. 81 at 5.]  According to Defendant, "it

---

[8] In her complaint, Plaintiff also alleges that Defendant's failure to return her to her previous position was a retaliatory adverse employment action.  [Doc. 1 ¶ 44.]  Defendant argues that Plaintiff was not entitled to return to her previous job because she remained out on extended leave for over a month and a half after she exhausted her FMLA leave on February 1, 2018 and, thus, was not entitled to reinstatement.  [Doc. 53-1 at 8-10.]  Defendant is correct that an employee who is absent for more than the period of time protected by the FMLA "does not have a right to be restored to [her] prior or similar position."  *Bender v. City of Clearwater*, No. 8:04-CV-1929-T23EAJ, 2006 WL 1046944, at *11 (M.D. Fla. Apr. 19, 2006).  Since Plaintiff was not entitled to be reinstated to the exact position she held before going out on leave, Defendant's failure to restore her to that position does not qualify as an adverse employment action.

21

was Plaintiff's return from extended leave at a time where no positions were immediately available that prevented [Defendant] from placing her in a teacher position, resulting in her loss of income." [*Id.*]

This is a close call, but the Court agrees with Plaintiff that for purposes of establishing a prima facie case, Defendant's failure to place her in a position for the remainder of the school year qualifies as an adverse employment action. Defendant's leave policy provides that at the end of an employee's approved leave of absence not covered by the FLSA, "every effort will be made to place the employee in a vacant position for which he or she qualifies that is equivalent to the previous position held." (Pl. Dep. Ex. 19.) Here, Plaintiff contends that she told Lewis she wanted to return to work, but Defendant refused to place her in another position, which resulted in her being out of work and losing income. As a result, the Court finds that she has presented evidence that she suffered an adverse employment action. *See Gillis v. Georgia Dep't of Corr.*, 400 F.3d 883, 887 (11th Cir. 2005) (noting, generally, "that actions that affect compensation are considered adverse employment actions"). Whether Defendant has given a legitimate reason for not placing her upon her release to work is better addressed at the next stages of the *McDonnell Douglas* analysis.

22

### 2.   Causation

Defendant argues that even if Plaintiff can show an adverse employment action, she cannot "draw any nexus between her FMLA leave and the [Defendant's] actions." [Doc. 53-1 at 16.]  As best the Court can tell, this argument rests entirely on Defendant's contention that Plaintiff has not demonstrated an adverse employment action.  [*Id.*]  But since the Court has found that Defendant's failure to place Plaintiff in a position for the remainder of the 2017-2018 school year is an adverse employment action, the Court will assume for present purposes that Plaintiff has also shown a causal connection for purposes of summary judgment, and address the reasons why Defendant did not restore her to a position in the next stages of the *McDonnell-Douglas* analysis.

### 3.   Pretext

Because Plaintiff established a prima facie case of retaliation based on Defendant's failure to place her into a position for the remainder of the 2017-2018 school year, the burden shifts to Defendant to proffer a legitimate nondiscriminatory reason for the adverse employment action.  Defendant has done so, pointing to evidence that Lewis searched for vacant positions and concluded that no positions existed for the remainder of the school year.  (*See* Lewis Dep. at 60, 66.)  Therefore, the burden shifts back to Plaintiff to show by a preponderance

of the evidence that the employer's legitimate nondiscriminatory reason was pretext for retaliation. To do so, an employee must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation marks omitted)). In making the required pretext showing, "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer"; and as long as "the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id*. at 1030. Instead, she must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538 (internal quotation omitted).

24

Significantly for present purposes, "an employer's mistaken belief is insufficient to establish pretext." *Vaughn v. FedEx Freight, Inc.*, 824 F. App'x 797, 803 (11th Cir. 2020) (citations omitted). "In and of itself, the mere fact that an employer was mistaken about the facts upon which the challenged employment decision was based does not establish pretext." *Jones v. RS & H, Inc.*, 775 F. App'x 978, 988 (11th Cir. 2019). "Rather, 'a plaintiff must present evidence from which a reasonable jury could find that the defendant did not honestly believe the facts upon which he allegedly based his non-discriminatory decision.'" *Id.* (quoting *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002)). In other words, the Court's "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010); *see also Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1313 (11th Cir. 2018) ("The question to be resolved is not the wisdom or accuracy of the employer's reasoning or whether the decision was prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivated the decision." (cleaned up)).

Plaintiff argues that she has shown that Defendant's proffered reason for not placing her in a position is pretext for retaliation because Lewis "displayed a negative attitude" toward her. [Doc. 80 at 9.] The Court disagrees. This assertion is far too self-serving and conclusory to raise an inference of pretext or intentional discrimination. (*See* Pl. Decl. ¶ 11 (stating that "Ms. Lewis had a negative attitude toward me from the beginning of the time I was released to return to work.").) Plaintiff does not explain what she means by "negative attitude," nor does she explain what Lewis said or did that made Plaintiff feel that Lewis had a "negative attitude" toward her.  In any event, even if Lewis disliked Plaintiff or harbored some sort of personal animosity toward her, those feelings do not show that Lewis was motivated in any way by Plaintiff's exercise of her FMLA rights. *See Hawkins v. Ceco Corp.*, 883 F.2d 977, 986 (11th Cir. 1989) (finding that supervisor's personal dislike of employee was not evidence of illegal discrimination).

Plaintiff also contends that a jury could disbelieve Lewis's statement that she was not aware of any potential jobs because Lewis "commented about Plaintiff having taken leave and thus not being able to dictate being returned to work." [Doc. 80 at 9.]  Again, the Court disagrees.  According to Plaintiff's own declaration, the context in which Lewis made those statements makes it clear that she was merely

26

explaining to Plaintiff Defendant's policy concerning placement of employees who are out of work on extended leave.  Under Defendant's policy, returning employees do not have the ability to choose where and when they return to work, and Lewis's statements do not undermine Defendant's stated reason for not placing her in a position prior to the end of the 2017-2018 school year.

Plaintiff also contends that she has shown pretext because Lewis spent just one day—March 30, 2021—looking for potential jobs in which to place her, and that "there were numerous jobs available for which [Plaintiff] was qualified." [Doc. 80 at 9.]  These arguments—which challenge the sufficiency of Lewis's search—are also not persuasive.  Lewis's testimony is uncontradicted that after she finished the investigation into the political cartoons, she searched for available positions and concluded that none were available for the remainder of the 2017-2018 school year. The fact that Lewis did not begin the search until she closed the investigation does not render her explanation inconsistent, implausible, incoherent, or contradictory. Plaintiff would have this Court second-guess Defendant's business judgment; however, this Court is "not a 'super-personnel department' assessing the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir.

27

2015).  Indeed, it is understandable why a school system would want to conclude

an investigation concerning teacher misconduct involving classroom instruction

before determining where (or even whether) to assign her.  Keep in mind that when

Plaintiff first met with Lewis in October, Plaintiff was told she would have been

placed on several days' leave to conduct the investigation.  Thus, the fact that Lewis

did not start to look for a possible replacement position before finishing the

investigation is not evidence of pretext.[9]

Likewise, Plaintiff's argument that Lewis's search was inadequate is

insufficient to show pretext.  As a factual matter, Plaintiff asserts generally in her

brief that there was an abundance of potential open positions for which she was

qualified [*see, e.g.*, Doc. 80 at 10-12]; however, she does not identify any specific

position or explain why any particular position was one for which she would have

---

[9] Plaintiff points out that on March 29, 2018, Defendant offered a special education position to Pete Pappas at Collins High School, and argues that this is evidence of retaliation because Plaintiff could have been considered for that position had Lewis started her search for potential positions on March 27. [Doc. 80 at 12.]  The Court disagrees.  As just explained, Defendant has offered a legitimate nonretaliatory reason for Lewis's waiting until March 30, 2018 to search for potential positions, and Plaintiff has not carried her burden to show pretext. Thus, Pappas's offer of employment on March 29, 2018 is not evidence of retaliation.

28

been qualified to fill under Defendant's attendance policy.[10]  Nor does she explain

why any of those positions were equivalent to her former job, as Defendant's leave

policy requires.  Thus, she has not carried her burden of showing that Lewis was

incorrect, or did not honestly believe, that no equivalent positions for which

Plaintiff was qualified were available.  But even if Plaintiff had shown that Lewis

ignored or overlooked potential equivalent positions, she offers no evidence from

which a reasonable jury could find that Lewis was motivated by unlawful animus.

*See Flowers*, 803 F.3d at 1338 (finding that school district's "ham-handed

investigation" of plaintiff, standing alone, was not sufficient to show pretext).

For these reasons, the Court finds that Plaintiff has failed to refute

Defendant's legitimate, non-retaliatory reason for not placing her in a position for

---

[10] The Court observes that in paragraphs 20 and 21 of her declaration, Plaintiff identifies dozens of positions that she contends she was certified to teach and that were available.  (Pl. Dep. ¶¶ 20-21.)  The mere fact that Plaintiff has identified those positions, however, does not undermine Lewis's testimony that she did not find any positions that were equivalent to the position Plaintiff vacated. Further, Plaintiff's declaration states only that she was certified to teach those positions; however, Defendant's Leave of Absence Policy states that Defendant will attempt to place a returning employee into a position for which she is qualified and "that is equivalent to the previous position held."  (Pl. Dep. Ex. 19 at 2.) Plaintiff presents no evidence—or argument—to suggest that any of those positions were equivalent to her previous position, or, more appropriately, that Lewis did not honestly believe that equivalent positions were available for which Plaintiff was qualified.

the remainder of the 2017-2018 school year.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim to the extent that it is based on Defendant's failure to place her into a position for the remainder of the 2017-2018 school year.

### C.    ADA and Rehabilitation Act Discrimination Claims

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  In the employment context, the ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The Rehabilitation Act provides, in pertinent part, that:

> No otherwise qualified individual with a disability . . ., shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

In evaluating disability discrimination cases based on circumstantial evidence, courts apply the *McDonnell Douglas* three-step evidentiary framework discussed above. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) ("[A] plaintiff may establish a prima facie case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases."). Under this framework, the plaintiff must first establish a prima facie case by showing that: (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning that she could perform the essential functions of the job in question with or without a reasonable accommodation; and (3) she suffered an adverse employment action in connection with her disability. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001).[11] After plaintiff makes that showing, the burden shifts to the

---

[11] The Court in *Lucas* and in other cases states the third element of the prima facie case as "[plaintiff] was discriminated against because of his disability." 257 F.3d at 1255. This phrasing suggests that a plaintiff must prove the ultimate question of the case—whether unlawful discrimination occurred—as part of his prima facie case. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007) (stating the third element as "[plaintiff] was subjected to unlawful discrimination because of his disability"). As Judge Vining of this District has noted, the Circuit has "consistently formulated the third prong in this manner," even though the formulation is incorrect. *See Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F. Supp. 2d 1341, 1345 (N.D. Ga. 2005). Judge Vining further noted that, in practice, the Circuit has only required "a plaintiff to present facts from which an

defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  After the defendant offers its reason, the presumption of discrimination is eliminated, and the plaintiff has the ultimate burden of proving intentional discrimination.  *Id.*  The plaintiff may do so by showing that the defendant's asserted reason is unworthy of credence and a pretext for discrimination.  *Id.*

Defendant argues that Plaintiff has not established any of the three prongs of the prima facie case for disability discrimination, and that even if she could, she cannot show that Defendant's proffered reason for actions it took are pretext for discrimination.   [Doc. 53-1 at 19-24.]   The Court needs not belabor these arguments, however, because Plaintiff's disability discrimination claims fail for the same reasons as her FMLA retaliation claim does.  To the extent that Plaintiff bases her claims on the denial of partial unemployment insurance benefits, the claim fails because Defendant did not take an adverse employment action against her. Likewise, to the extent that she contends that Defendant discriminated against her by not placing her into a position for the remainder of the school year following

---

inference of discrimination can be made (as is true in all other discrimination cases)," which, as to the third prong, only meant showing an adverse employment action that could be actionable under the ADA occurred.  *Id.*

her release to return to work, she has not carried her burden of showing that Defendant's legitimate, nondiscriminatory reason for not doing so was pretextual. Therefore, Defendant's motion for summary judgment should be granted as to the ADA and Rehabilitation Act discrimination claims.

### D.   ADA and Rehabilitation Act Retaliation Claims

Plaintiff's ADA and Rehabilitation Act retaliation claims suffer the same fate.  The ADA makes is unlawful to discriminate against an individual for opposing any act or practice made illegal under the ADA.  42 U.S.C. § 12203(a); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997).  The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the ADA, and retaliation claims under the Rehabilitation Act are governed by the same standards used in ADA cases.  *Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011).  In a case involving circumstantial evidence, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart*, 117 F.3d at 1287; *see also Burgos-Stefanelli*, 410 F. App'x at 245 (applying the ADA standard in assessing a Rehabilitation Act retaliation claim).  If the plaintiff establishes a prima facie case, the burden shifts to the employer to

33

articulate a legitimate non-discriminatory reason for its actions. *Stewart*, 117 at 1287.  If the employer satisfies that burden, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the defendant's explanation is merely a pretext for retaliation. *Id.*

As discussed above, to the degree that Plaintiff contends that Defendant unlawfully retaliated against her by interfering with her unemployment insurance benefits claim, the claims fail because Defendant did not take an adverse employment action against her.  Likewise, to the degree that her claims are based on the failure to place her in a position immediately upon her release to work, Plaintiff has not shown that Defendant's proffered reason was pretextual. Therefore, it is recommended that Defendant's motion for summary judgment be granted as to her ADA and Rehabilitation Act retaliation claims.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment be **GRANTED**.

IT IS SO RECOMMENDED this 16th day of June, 2021.

_____
JOHN K. LARKINS III
United States Magistrate Judge

34