UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SELENA EVANS,

          Plaintiff,

     v.

GWINNETT COUNTY SCHOOL
DISTRICT,

          Defendant.

CIVIL ACTION NO.
1:20-cv-00687-JPB

## ORDER

This matter is before the Court on the magistrate judge's Final Report and

Recommendation ("Report").  ECF No. 84.  Having reviewed and fully considered

the Report and related filings, the Court finds as follows:

## I.  BACKGROUND

Plaintiff Selena Evans' ("Evans") complaint alleges claims against

Defendant Gwinnett County School District (the "District") under the Family and

Medical Leave Act ("FMLA"), Title I of the Americans with Disabilities Act (the

"ADA") and Section 504 of the Rehabilitation Act (the "Rehabilitation Act").  In a

nutshell, Evans claims that the District retaliated and/or discriminated against her

for taking medical leave by refusing to assign her to a teaching position after she

returned and preventing her from obtaining partial unemployment benefits.

The record shows that Evans was employed by the District as a Special Education teacher during the 2017/2018 school year, and she was granted FMLA leave from October 20, 2017, through February 1, 2018.  Before Evans began her leave, the District opened an investigation of her due to a complaint that she included inappropriate political cartoons in a lesson plan.

After Evans' FMLA leave ended, she remained on non-FMLA leave for approximately nine weeks under the District's Leave of Absence Policy ("Absence Policy").  During this period, the District hired a teacher to fill Evans' position.

On March 30, 2018, three days after Evans returned from leave, Human Resources Staffing Director, Dr. Leslie Lewis ("Lewis"), completed the investigation of the complaint against Evans.  Evans was admonished to use appropriate resources in the classroom.

Lewis thereafter started a job search to place Evans in another position, pursuant to the Absence Policy.  That policy states as follows:

> At the end of an approved leave of absence not covered by FMLA, every effort will be made to place the employee in a vacant position for which he or she qualifies that is equivalent to the previous position held.  If a vacant position is not available, or the employee refuses an offered position, the employee will be terminated and will be eligible to apply for future positions within GCPS.  Human Resources will determine if an employee is qualified for an alternative position.

The parties disagree regarding the date Lewis started the search and the extent and nature of her search.  Regardless, it is undisputed that Lewis did not begin the search until after the investigation concluded on March 30, 2018; the following week was Spring Break; Lewis informed Evans on the Monday after Spring Break that she would be placed in a position for the 2018/2019 school year; and Lewis did not continue to look for a new placement for Evans for the remainder of the 2017/2018 school year.

Lewis states she did not offer Evans a position for the remainder of the 2017/2018 school year because her search yielded no vacancies for that period that were equivalent to Evans' former position.  Evans, however, identifies numerous open positions for that period.  The District does not challenge that Evans was qualified for those positions or that they were equivalent.  It claims only that Lewis was not obligated to search for an open position beyond April 9, 2018, after she identified an open position for the 2018/2019 school year and notified Evans of that position.

Evans states she made it clear to Lewis that she needed to work to support her family but Lewis responded that Evans "should have thought about that before [she] went out on leave for that long."  Evans' Decl. ¶ 17, ECF No. 80-4.  Lewis also told Evans that Lewis "would decide where and when" Evans would return to

work and that Evans "should be grateful that she was returning to work." *Id.*  In response to Evans' concern that she could not survive the entire summer without income, Lewis "reiterated that [Evans] should not have gone out on leave." *Id.* The Court hereinafter refers to this collection of statements as the "Leave Statements."

Lewis also told Evans that she was not eligible for unemployment insurance benefits because she was still employed by the District.  Evans eventually applied for unemployment benefits during the summer, but her claim was denied because teachers are not eligible for unemployment benefits during school breaks where there is a reasonable assurance of returning to work.

The Report recommends granting summary judgment in favor of the District on all of Evans' claims.  This recommendation is based on the Report's conclusion that the record lacks direct evidence of discrimination or sufficient evidence of pretext.

Evans objects to the Report on several grounds.  First, she argues that the Report incorrectly concludes that the Leave Statements are not direct evidence of discrimination.  She contends that the Leave Statements constitute such evidence because in making those statements, Lewis was explaining why she was refusing to

place Evans for the remainder of the 2017/2018 school year and was not simply explaining the Absence Policy, as the Report finds.

Second, Evans challenges the Report's finding that she did not suffer an adverse employment action as a result of the District's decision not to seek partial unemployment benefits on her behalf. In her view, the decision constitutes an adverse action because she was prevented from accessing benefits to which she was entitled.

Third, Evans takes issue with the Report's finding that she did not carry her burden on the issue of pretext. She asserts that evidence such as the Leave Statements, standing alone, is sufficient to show pretext and when combined with other evidence, such as Lewis' allegedly inadequate job search, provides a "convincing mosaic" of pretext.

Fourth, Evans objects to the relevance and characterization of evidence in the Report that she turned down certain placements for the 2018/2019 school year before finally accepting a position.

## II.   DISCUSSION

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any

portion of the Report that is the subject of a proper objection on a *de novo* basis and any portion to which there is no objection under a "clearly erroneous" standard.

A party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).  "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."  *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009).

### A.   Legal Standard

"Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting Fed. R. Civ. P. 56) (quotation marks omitted).  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, "[t]he basic issue before the court . . . is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen*, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." *Id.*

After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist. *Id.* In carrying this burden, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

In sum, if the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### B.   <u>Analysis</u>

The key issues for the Court to decide are whether the Report correctly concludes that:  (i) the Leave Statements do not constitute direct evidence of discrimination; (ii) Evans did not suffer an adverse employment action as a result of the District's decision not to seek partial unemployment benefits on her behalf; and (iii) the Leave Statements and other evidence in the record do not support Evans' pretext argument.[1]

### 1.   Direct Evidence of Discrimination

The Report concludes that Lewis' Leave Statements do not constitute direct evidence of discrimination because "they are not 'blatant remarks, whose intent could mean nothing other than to discriminate on the basis' of a protected classification."  ECF No. 84, p. 13.  The Report further explains that "[w]hile perhaps insensitive," the Leave Statements could "reasonably be understood as [Lewis] simply sharing with [Evans] the unfortunate reality that an employee

---

[1] Since Evans concedes that her fourth objection is not outcome determinative, the Court does not address it.

returning from an extended leave of absence has little control over where or when he or she is placed." *Id*.

As the Eleventh Circuit Court of Appeals has established,

> direct evidence is evidence that, if believed, proves the existence of a fact without inference or presumption. Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. By contrast, evidence that merely suggests, but does not prove, a discriminatory motive is not direct evidence.

*Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1215 (11th Cir. 2021) (internal citations and punctuation omitted).

Following this reasoning, the Court agrees with the Report that the Leave Statements do not constitute direct evidence of discrimination because they can be interpreted in more than one way. For this reason, the Court overrules Evans' objection on this point.

### 2.    Adverse Employment Action

The Report concludes that Evans did not suffer an adverse employment action as a result of the District's decision not to seek partial unemployment benefits on her behalf because the record does not establish that the District was required to file for such benefits or that Evans relied on the District's advice in initially deciding not to apply for same.

The undisputed facts are that the DOL regulation in effect at the time of the District's actions states that an employer *may* file for partial unemployment benefits on behalf of an employee; the District had never applied for partial unemployment benefits for any of its employees; and Evans eventually submitted her own application for unemployment benefits.

Thus, the Court agrees with the Report that the record does not support Evans' claim that the District was obligated to seek unemployment benefits for her when it did not place her or that she was harmed by the District's decision not to do so.  She also has not shown that she would have been approved for such benefits had she applied.  Without such evidence, the Court finds that Evans' objection lacks merit.

### 3.   Pretext[2]

The Report concludes that Evans has not carried her burden to show pretext. First, the Report reasons that Evans' assertion that Lewis had a negative attitude towards her "is far too self-serving and conclusory to raise an inference of pretext or intentional discrimination."  ECF No. 84, p. 26.

---

[2] The Report finds that the failure to place Evans in a position for the remainder of the 2017/2018 school year was an adverse employment action and assumes that the District's explanation that no appropriate positions were available during this period is a legitimate, non-discriminatory reason for the failure.

Second, the Report disagrees with Evans' contention that a jury could interpret the Leave Statements as reflecting a discriminatory motive because it finds that the context of the statements clearly indicates that Lewis was simply explaining the provisions of the Absence Policy.

Third, the Report rejects Evans' criticism of the sufficiency of Lewis' job search because it finds that it is inappropriate to second-guess Lewis' business judgment that no equivalent position was available.

The Report also states that Evans failed to identify specific positions open during this time and to explain why she would have been qualified to fill a particular position.  The Report determines that even if Evans shows that Lewis ignored certain positions, Evans "offers no evidence from which a reasonable jury could find that Lewis was motivated by unlawful animus."  *Id*. at 29.

To show pretext, Evans must "come forward with evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons given by the [District] were not the real reasons for the adverse employment decision."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (punctuation and citation omitted).  At the summary judgment stage, the Court must view the evidence in the light most favorable to Evans, and if there is "a sufficient disagreement" regarding material facts, then the District

cannot prevail.  *Allen*, 121 F.3d at 646 (punctuation and citation omitted).  In

other words, the Court must deny the District's Motion unless the evidence

"is so one-sided that [the District] must prevail as a matter of law."  *Id*.

Here, the Court finds that the record presents significant disagreement

on the issue of pretext.  For example, a reasonable fact finder could conclude

that the Leave Statements (Lewis' repeated statements that Evans should not

have taken extended leave) did not simply represent Lewis' explanation of

the Absence Policy but rather reflected Lewis' animus on account of Evans'

extended leave.  Likewise, a factfinder could interpret Lewis' limited search

for open positions as evidence that Lewis did not wish to place Evans in an

open position for the remainder of the year as Evans' punishment for taking

extended leave.  Finally, a jury could reject Lewis' explanation that she

found no suitable open positions in which to place Evans in light of Evans'

evidence that she was qualified for numerous positions open for the

remainder of the 2017/2018 school year.

In short, because the Court must view the evidence and all factual

inferences arising from it in the light most favorable to Evans, and the

evidence is not so one-sided that the District must prevail as a matter of law,

the Court sustains Evans' objection to the portion of the Report that finds

she has not carried her burden to show pretext.

Based on the foregoing analysis, the Court approves and adopts the

portion of the Report finding that (i) Evans has not provided direct evidence

of discrimination; and (ii) Evans did not suffer an adverse employment

action as a result of the District's decision not to seek partial unemployment

benefits on her behalf.  The Court declines to adopt the portion of the Report

that finds Evans failed to carry her burden on the issue of pretext.

Accordingly, the Court denies summary judgment on Evans' FMLA claims.

Because the Report's recommendation of summary judgment on Evans'

ADA and Rehabilitation Act claims relies on the finding that Evans did not offer

sufficient evidence of pretext, the Court similarly finds it is not appropriate to grant

summary judgment on those claims.

Moreover, there is still an open question as to whether Evans has established

a prima facie case of discrimination and retaliation under the ADA and

Rehabilitation Act.  The Report assumed these questions, without deciding them,

and proceeded directly to the issue of pretext.

### III.   <u>**CONCLUSION**</u>

For the above reasons, the Court **APPROVES IN PART** the Final Report and Recommendation (ECF No. 84) as the order of the Court.  As to Evans' FMLA claim, the District's Motion for Summary Judgment (ECF No. 53) is **DENIED IN PART**.  The Clerk is **DIRECTED** to return this matter to the magistrate judge for further proceedings.

**SO ORDERED** this 17th day of September, 2021.

_____
**J. P. BOULEE**
United States District Judge